**Alfred Layton GRIER and Thomas Charles Briscoe, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19472.**

United States Court of Appeals Ninth Circuit.

May 11, 1965.

Rehearing Denied June 23, 1965.

Cornell Ridley, Los Angeles, Cal., for appellant Grier.

Arthur J. Schlanger, Gostin & Katz, San Diego, Cal., for appellant Briscoe.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty., Chief, Crim. Sec., Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and BOWEN, District Judge.

CHAMBERS, Circuit Judge:

Hank Brown on September 30, 1963, crossed the border on foot from Tijuana, Mexico, to San Ysidro, California. He was followed by appellant Thomas Charles Briscoe.[1] Questioned by customs officers at the border, although Brown [2] was observably rather nervous, he did temporarily satisfy the American officers. He was not searched and he walked on into the United States to a bus station not more than 100 yards away. Briscoe, with narcotics "burn marks" on his arms, was questioned closely. He said Brown was traveling with him. Brown had denied knowing Briscoe.

Thereupon a customs officer went to the bus station and asked Brown to return to the crossing station. Brown complied. En route back, the officer heard something hit the ground. He discovered a small sack containing heroin. It was inferable that Brown had dropped it, intending to abandon it.

After trial commenced on a narcotics indictment, a motion was made to suppress the narcotics found in the bag. The motion was denied. After conviction, this appeal was taken.

 The government asserts several reasons to sustain the trial court. It says that the motion was made too late and that Briscoe and Grier have no standing to object; that is, to assert Brown's right. While the border setting and the rights of customs officers thereat cannot be ignored, we elect to dispose of the case by saying, on the facts of the case, there was no arrest at the time of the dropping incident or theretofore, and there was just no search. This was not a case of trick or threat where the victim who disgorges sometimes gets the benefit of the search rules.

The point is made that the government went beyond the bill of particulars furnished. We find the point without merit. It was appellants who took the case out beyond the bill of particulars.

 Grier alone makes a Sixth Amendment point—deprivation of counsel. It seems during part of the sequence of the crime that informer Brown was carrying secreted a pocket broadcasting device and the narcotics agents had a receiver. The broadcast statements particularly implicated Grier. They were more than admissions. They were conduct in the commission of the crime.

At the trial, no objection was made by good counsel to the receipt of the testimony. Were we to overlook this, we would say that we cannot agree with Grier that Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, would be applicable. In Massiah the eavesdropping occurred during the accusatory stage and even after indictment. Here it was concurrent with the acts of the crime. Although it is a case of alleged unreasonable search, Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, would indicate affirmance.

If Grier be right in his contention, a bank could not secrete a microphone to record the stick-up command of a bank robber made to the teller. One is not entitled to counsel while committing his crime and the Fourth Amendment (search and seizure) does not give Grier quite as much right to privacy as he seeks.

The judgments of conviction are affirmed.

1. Grier, Brown said, had preceded him and Briscoe across the line and had left San Ysidro before they crossed.

2. Brown made the trip from the Los Angeles area to Tijuana with appellants Grier and Briscoe. Brown was the principal witness at the trial against the two appellants. His story, in effect, was that the importation was a joint enterprise of the three.